**DIAMOND MCCARTHY LLP**
489 Fifth Avenue, 21st Floor
New York, New York 10017
(212) 430-5400
Adam L. Rosen
Sheryl P. Giugliano

**FISHER, BENDECK & POTTER, P.L.**
501 So. Flagler Drive, Suite 450
West Palm Beach, Florida 33401
 (561) 832-1005
Jeffrey D. Fisher, *subject to pro hac vice admission*
Zachary R. Potter

*Attorneys for Ashley Kozel*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                          Chapter 11

     212 WEST 18 LLC,                      Case No. 17-11277 (MG)

               Debtor.

------------------------------------------------------------x

**MOTION OF ASHLEY KOZEL FOR ORDER
MODIFYING AUTOMATIC STAY OF 11 U.S.C. §362 FOR CAUSE,
<u>INCLUDING BAD FAITH, TO CONTINUE SHERIFF'S AUCTION</u>**

TO:    THE HONORABLE MARTIN GLENN
        UNITED STATES BANKRUPTCY JUDGE:

     Ashley Kozel (the "<u>Movant</u>"), a secured creditor and former wife of Todd Kozel ("<u>Mr.</u>

<u>Kozel</u>"), the alter ego of 212 West 18 LLC, the above-captioned debtor and debtor in possession

(the "<u>Debtor</u>"), files this motion (the "<u>Motion</u>") seeking entry of an order modifying the automatic

stay pursuant to section 362(d) of title 11, United States Code (the "<u>Bankruptcy Code</u>") for cause,

including bad faith, to permit Movant to proceed with the scheduled Sheriff's auction (the

"<u>Auction</u>") of the condominium property known as Residential Unit 14CD in the building

designated by the street address of 212 West 18th Street, New York, New York 10011 (the

"Condominium") in furtherance of enforcing and reducing the outstanding amount of a judgment

in the amount of $34,611,702.00 (the "212 West Judgment") entered against the Debtor on

September 15, 2016 by the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota

County, Florida (the "Florida Court") in the case *In re: The Former Marriage of Ashley D. Kozel*

*and Todd Kozel,* Case No. 2010DR8976N, and domesticated in New York on January 10, 2017 in

the action titled *Kozel v. 212 West 18 LLC,* Index No. 150261/2017 (the "NY Action"). In support

of the Motion and Movant's request for an order on shortened notice, Movant respectfully submits

the Declaration of Adam L. Rosen, dated May 15, 2017, and the Declaration of Jeffrey D. Fisher,

dated May 15, 2017 (the "Fisher Declaration"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      This chapter 11 filing invokes the automatic stay and this Court's jurisdiction in bad

faith to continue the Debtor's long-standing pattern of frustrating, hindering and unduly delaying

the Movant's efforts to collect the 212 West Judgment rendered by the Florida Court.  *See Kozel*

*v. Kozel*, No. 2010DR8976NC, 2016 WL 5082183, at *2 (Fla. Cir. Ct., 12th Jud. Cir. Sarasota Cty.

Sept. 14, 2017) ("[T]he court will no longer tolerate [Mr. Kozel's] obstruction of these proceedings

by acting through sham entities created by the team of asset protection lawyers that participated in

the fraud on the court.").

2.      The Debtor's voluntary chapter 11 petition was filed the morning of May 10, 2017

(the "Petition Date").  The timing of the filing demonstrates bad faith for numerous reasons,

including the following:

   a.   The petition was filed two (2) days after the Supreme Court of the State of New
        York, New York County (the "New York Court"), Index No. 154201/2017, denied
        the Debtor's attempt to obtain a temporary restraining order ("TRO") to stay the

2

Auction of the condominium. Rather than seek appellate review of the denial of the stay, the Debtor filed this action to obtain an automatic stay;

b.  The petition was filed approximately one hour before the scheduled Auction of the Condominium, even though the Debtor has been on notice of the Auction for months;

c.  The petition was filed one (1) day before an evidentiary hearing in the Florida Court on whether to apply the crime/fraud exception to the Debtor's privilege claims;

d.  The petition was filed one (1) day before the Florida Court was to enter yet another sanctions order against the Debtor due to its violation of a case management order requiring the overseas person claiming to own the Debtor to physically appear in court.

3.      The Debtor's chapter 11 filing is its most recent bad faith delay tactic designed to frustrate collection proceedings based upon "[p]rocedural [g]amesmanship" and other misconduct intended to "unreasonably delay [the] proceedings." *Kozel v. Kozel*, No. 2010DR8976NC, 2016 WL 5082182, at *2 (Fla. Cir. Ct., 12th Jud. Cir. Sarasota Cty. Sept. 14, 2016).

4.      Indeed, as evidenced by the Exhibits attached to the Fisher Declaration, the Debtor and Mr. Kozel were found by the Florida Court, after days of evidentiary hearings, to have "committed a 'fraud on the court' and violated the most basic standards of integrity of litigants by knowingly falsifying records for production in discovery, by offering false testimony regarding those documents and other material issues, and by deliberately undermining [the Florida Court's] September 11, 2015 asset injunction while on written notice." *Kozel v. Kozel,* No. 2010DR8976NC, 2016 WL 5082181 *1 (Fla. Cir. Ct., 12th Jud. Cir. Sarasota Cty. Sept. 15, 2016).

5.      As a result of those egregious acts, the Florida Court (a) found, among other things, that the Debtor is the alter-ego of Mr. Kozel; (b) granted Movant's motion to enter contempt and discovery sanctions against the Debtor, and (c) held that Movant is entitled to recover from the Debtor a judgment in the amount of $34,611,702.00.

6.      Except for a *de minimis* amount collected through judgment enforcement procedures, neither the Debtor nor Mr. Kozel have made any payments due on the 212 West Judgment, or the Mr. Kozel Judgment (defined below), respectively, and have wrongfully and illegally attempted to transfer the Condominium in clear violation of the Florida Court's 2015 Asset Injunction (defined below).  The Debtor and Mr. Kozel's efforts to obtain a stay of enforcement without a bond have consistently been denied.

7.      It is clear from the history of the litigation between the parties, and the timing of the chapter 11 filing, that the Debtor filed its voluntary petition to prevent the Auction of the Condominium as a delay tactic and without any rehabilitative purpose.  Mr. Kozel and the Debtor continue their contemptuous conduct of disregarding the authority of the Florida Court, and their manipulation of the legal system.  Movant respectfully submits that cause exists pursuant Bankruptcy Code §362(d) to grant relief from the automatic stay to continue the Auction and seek to enforce and reduce the outstanding amount of the 212 West Judgment.

## JURISDICTION; VENUE; BASES FOR RELIEF

8.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).  Venue of this case and this Motion are property in this District under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105(a), 362(d)(1) and (2), and 112(b), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

## BACKGROUND

**The Chapter 11 Filing**

9.      On the Petition Date, the Debtor filed a petition under chapter 11 of the Bankruptcy Code in this Court.

10.     It is unclear whether the filing of this case was properly authorized, particularly in light of the findings of the Florida Court in its September 14, 2016 decision, regarding the genesis of the transfer of the Condominium to the Debtor.  To date, the Debtor has not filed a corporate resolution in support of the petition, and it is doubtful whether the person signing the petition was authorized to do so.[1]

**The Debtor's Ownership And Alleged Debt**

11.     According to the Florida Court's September 14, 2016 Order, the Debtor was owned by the Gokana Trust—an alter ego entity controlled by Mr. Kozel. Mr. Kozel created the Gokana Trust (the "Gokana Trust") in 2009 in the Isle of Jersey, a known tax haven and notorious anti-creditor jurisdiction, to defraud the movant.  In reality, the Condominium was purchased by and for Mr. Kozel, but the purchase contract was put in the name of the Debtor to hide Mr. Kozel's ownership interest therein.

12.     The Debtor claims that it is now owned by Capella Investments, a Belize corporation.  This transaction, however, was also determined to be (after an evidentiary hearing) a sham transaction utilizing falsified and back-dated documents that were intended to defraud the

---

[1] The Florida Court ordered the person authorized to act on behalf of the Debtor to appear at a case management conference on April 24, 2017.  The Debtor asked to be excused from this requirement because of the purported burden of travel on an unnamed overseas person claiming to own the "membership interests" in the company.  The Florida Court denied the Debtor's request to be excused from the in-person requirement.  When the case management conference was held, no one appeared.  The Florida Court orally ordered the Debtor's pleadings to be stricken (again) as a sanction.  When it came time for the written order to be entered, the Debtor's Florida counsel argued to the Florida Court that it would violate the automatic stay if such an order was entered following the filing of the bankruptcy petition.

Florida Court.   In making this ruling, the Florida Court determined that the Debtor is the alter-ego of Mr. Kozel.

13.     The Debtor may allege that the Condominium is subject to a purchase money interest security mortgage in the amount of $12,750,000.00 granted to the Gokana Trust.   This document was attached to the Debtor's unsuccessful TRO motion.   At the hearing on the TRO, however, evidence was presented to the New York Court demonstrating that the unrecorded mortgage is another back-dated, fraudulent document.

**The Divorce Proceedings and the Divorce Settlement Agreement**

14.     Movant and Mr. Kozel were previously married. Mr. Kozel was formerly the CEO of Gulf Keystone Petroleum ("GKP").

15.     In their divorce action in Florida, Movant sought an injunction relating to (a) 30 million shares of GKP stock which Mr. Kozel placed in an offshore, asset protection trust, i.e., the Gokana Trust; and (b) 16 million shares of GKP stock which Mr. Kozel held in another overseas entity.

16.     On January 28, 2011, the Florida Court issued an *ex parte* asset injunction (the "Asset Injunction") freezing the GKP stock.   After an evidentiary hearing, the Florida Court entered an amended injunction on February 17, 2011.

17.     Eventually, Movant and Mr. Kozel entered into a Settlement Agreement (the "Divorce Settlement Agreement") pursuant to which Mr. Kozel was required to transfer certain shares of stock to the Movant by January 27, 2012.   Further, they agreed to the entry of another injunction freezing the above-described stock.

**The Post-Judgment Procedural History and the Asset Injunction**

18.     On November 27, 2012, the Movant filed a petition for damages in the Florida Court seeking to enforce the Divorce Settlement Agreement due to Mr. Kozel's violation of the Divorce Settlement Agreement.  Mr. Kozel withheld 17 million shares of the Movant's stock so that he could trade them in a "hot market."  When the market crashed, he made a belated delivery of the shares.

19.     The Florida Court conducted a five-day trial and on July 23, 2015 entered an order (the "Mr. Kozel Judgment"), granting a judgment against Mr. Kozel for $34,611,702.00 and for other relief.  Mr. Kozel moved for rehearing and an amended judgment (with non-substantive changes) was entered on September 11, 2015.

**The 2015 Asset Injunction**

20.     On September 11, 2015, the Florida Court held a hearing on the Movant's request for a new asset injunction.  At the conclusion of the hearing, the Florida Court entered its *Asset Injunction and Order* (the "2015 Asset Injunction").  The Florida Court explained that a broad asset injunction  was needed because, during the divorce proceedings, Mr. Kozel attempted to conceal in excess of $100 million in marital assets to undermine the jurisdiction and authority of the Florida Court.  Further, based upon the record before it, the Florida Court concluded "that [Mr. Kozel] ha[d] no intention of complying with the court's amended final judgment or other orders."

21.     After finding that the Movant was "legitimately in fear of irreparable harm," the Florida Court enjoined Mr. Kozel "from selling, transferring, alienating, pledging, forfeiting, hypothecating, encumbering, mortgaging, dissipating, spending and/or purchasing, and/or concealing and/or otherwise alienating any real property, personal property, securities, cash, or other assets or income of any kind or nature in which he holds an interest."  "Interest" was defined

broadly to include "any interest, regardless of whether he holds that interest directly or indirectly, beneficially, or through an entity or series of entities" as well as "any right to use or possess personal or real property." 2015 Asset Injunction, ¶7.

22.    Significantly, the 2015 Asset Injunction expressly applied to any interest, direct or indirect, that Mr. Kozel held in the Condominium, including its contents, which were not to be removed.

23.    In addition, the 2015 Asset Injunction was binding upon not only Mr. Kozel, but his agents, servants, and attorneys.

**Impleading the New Wife and the Debtor**

24.    Despite the entry of the 2015 Asset Injunction, the Movant discovered that Mr. Kozel made fraudulent gifts, transfers, conversions, assignments and other conveyances of real and personal property to third parties in violation of the Florida Court orders.

25.    On January 13, 2016, the Movant filed a motion titled, *Former Wife, Ashley Kozel's Amended Motion for Proceeding Supplementary and/or to Implead Third Parties and for Other Relief* (Filing No. 36537089) (the "Motion to Implead the New Wife and Debtor") with the Florida Court to implead Mr. Kozel's new wife, Inga Kozel (the "New Wife"), the Debtor, 3601 Setai LLC, the Gokana Trust, Emeralp Trust Limited, and/or such other trusts, limited liability companies and entities that were the recipients of such fraudulent transfers.

26.    In particular, the Motion to Implead the New Wife and Debtor asserted that Mr. Kozel and the New Wife contracted to buy the Condominium for $12.75 million at the time he was being sued by the Movant for millions of dollars, but took title in the Debtor's name to hinder, delay, or defraud the Movant.  The New Wife recently invoked her Fifth Amendment right against

self-incrimination with respect to the transaction and, to date, has refused to answer any questions about it.

**Impleaded Parties' Attempted Delay and Removal to District Court**

27.    The Debtor moved to dismiss for lack of subject matter and personal jurisdiction, and the Movant opposed.

28.    After the Florida Court considered testimony, documentary evidence, and legal arguments on the Debtor's motion to dismiss, the impleaded parties removed the case to the United States District Court for the Middle District of Florida.

29.    Eventually, (on August 4, 2016), the District Court remanded the case (finding that the removal was undertaken for improper forum shopping purposes, *i.e.,* to "beat a swift retreat" to federal court in light of the adverse findings made by the trial court), and the Florida Court regained jurisdiction to enter its order on the fully-completed trial which took place in April 2016. *Kozel v. Kozel*, 8:16-CV-1384-T-36TGW, 2016 WL 4163562, at *5 (M.D. Fla. Aug. 4, 2016) (rejecting "jurisdictional forum selection gamesmanship" and stating that petitioner "beat a swift retreat to federal court" following a finding of "fraud on the court").

**September 14, 2015 Decision Finding Jurisdiction and Fraud**

30.    On September 14, 2016, the Florida Court denied the Debtor's motion to dismiss for lack of subject matter and personal jurisdiction and found, among other things, that the Debtor was the alter ego of Mr. Kozel based upon a number of relevant facts: (a) the Debtor was formed by Mr. Kozel and the Gokana Trust to hide Mr. Kozel's ownership interest in the Condominium; (b) the Debtor followed no corporate formalities; (c) the Debtor failed to maintain customary books and records; (d) the Debtor accepted the assignment of the purchase and sale contract for the Condominium from the New Wife without any due diligence; (e) the Debtor allowed Mr. Kozel

and the New Wife to reside as "tenants" in the Condominium without a written lease, security deposit, or financial disclosures, and without the payment of actual rent. *Kozel v. Kozel,* No. 2010DR8976NC, 2016 WL 5082180 *3-4 (Fla. Cir. Ct. Sarasota Cty. Sept. 14, 2016). The Debtor has appealed the Florida Court's September 14, 2016 Order.

31.    In its September 14, 2016 decision, the Florida Court also found that the Debtor, acting together with the New Wife, Michael Freeman, Esq. (the Debtor's "manager") and others had committed "a knowing, intentional 'fraud on the court' in anticipation of a judgment" demonstrating the Debtor was formed and used for improper purposes, based upon the following credible evidence:

> a.    Mr. Freeman and others, including Mr. Kozel, "manufactured, falsified, and backdated documents for production" in Movant's collection/enforcement case to make it appear that the membership interests in the Debtor had been sold <u>before</u> the entry of the Asset Injunction when the sale was a sham. Mr. Freeman even attempted to produce the falsified documents in discovery as legitimate; and

> b.    Mr. Kozel and others manufactured a backdated and falsified lease agreement for production in discovery in order to mislead the Movant and the court that it was a *bona fide* lease and basis for Mr. Kozel's and New Wife's use of the Condominium as non-owners.

*Id.* at 4-5 ("[T]he former husband does not have much by way of 'defenses' left and, instead, his strategy is to falsely claim to be broke and to leave it to his 'asset protection' entities to delay the administration of justice with respect to his hidden assets.").

**September 15, 2016 Contempt and Discovery**
**Sanctions Order Against the Debtor**

32.     On September 15, 2016, after holding days of evidentiary hearings, the Florida

Court entered an order granting the Movant's motion to enter contempt and discovery sanctions

against the Debtor as a result of its fraud on the Florida Court, and found that the Debtor

"committed a 'fraud on the court' and violated the most basic standards of integrity of litigants by

knowingly falsifying records for production in discovery, by offering false testimony regarding

those documents and other material issues, and by deliberately undermining the [2015 Asset

Injunction] while on notice thereof." *Kozel v. Kozel,* No. 2010DR8976NC, 2016 WL 5082181 *1

(Fla. Cir. Ct. Sarasota Cty. Sept. 15, 2016).    The Debtor has appealed the Florida Court's

September 15, 2016 Order and sought a stay pending appeal.  The stay request was denied.

33.     In addition, the Florida Court held that "[t]he fraud with respect to the sales

documents was willful, intentional, and it permeated the entire proceedings against [the Debtor].

Further it demonstrated a deliberate and contumacious disregard of the court's authority, **bad**

**faith**, and deliberate callousness in the face of the standards of integrity required of litigants.

Therefore, the court finds that only the strongest sanctions are appropriate." *Id.* at *2. (emphasis

supplied.)

34.     As a result, the Florida Court held in its September 15, 2016 order that: (a) the

Debtor's pleadings were stricken and all allegations against it by Movant were deemed true; (b) a

default judgment was entered against the Debtor; (c) the Debtor is the alter ego of Mr. Kozel; and

(d) the Movant is entitled to recover from the Debtor in excess of $34 million.  *Id.*

*De Minimis* **Collections, Unsuccessful Enforcement, Diminution of Value**

35.     To date, other than a *de minimis* amount of interest (less than two weeks – about $65,000) collected in Lithuania, Movant has been unsuccessful in collecting under the Mr. Kozel Judgment or the 212 West Judgment, respectively, because of their obstruction and procedural gamesmanship.

36.     On May 3, 2017, the Board of Managers of Walker Tower Condominium filed, on behalf of the unit owners, a *Notice of Lien for Unpaid Common Charges* (the "Common Charges Lien").

**Perfection and Domestication in NY of the 212 West Judgment**

37.     On January 3, 2017, Movant filed the *Affidavit of Kevin Fritz, Esq. in Support of Application to Record Foreign Judgment in New York Pursuant to CPLR 5402(a)* (NY Action Dkt. No. 1) commencing the NY Action seeking to domesticate the 212 West Judgment against the Debtor in New York, and stating that the judgment was not satisfied and was not rendered by default in appearance or by confession of judgment, or stayed.

38.     On January 11, 2017, Movant filed the *Notice of Filing of Foreign Judgment in New York Pursuant to CPLR 5403* (NY Action Dkt. No. 3).  The 212 West Judgment is a valid secured claim against the Debtor's interest in the Condominium.

**The Auction and the TRO**

39.     On January 11, 2017, the Execution of the 212 West Judgment was signed and delivered to the Sheriff.

40.     The Sheriff's Auction of the Condominium was scheduled for May 10, 2017.

41.     The Sheriff certified that on March 2, 2017, he served notice of the Auction upon the Debtor's registered agent, Corporation Service Company.

42.    On May 5, 2017, the Debtor attempted to hinder and delay the NY Action by seeking entry of a TRO restraining and enjoining the Auction pending a final resolution of a special proceeding seeking to, vacate the execution, void the levy, cancel the Auction, vacate the domestication of the 212 West Judgment, and stay enforcement of all money judgment proceedings in New York relating to the 212 West Judgment.

43.    On May 8, 2017, the Debtor's request for a TRO was denied, and two (2) days later, the Debtor commenced this chapter 11 case.

## RELIEF REQUESTED

44.    By this Motion, Movant is seeking entry of an order modifying the automatic stay pursuant to Bankruptcy Code §§ 362(d)(1) and (2) for cause, including bad faith, to permit Movant to proceed with the Auction of the Condominium, in furtherance of enforcing and reducing the outstanding amount of the 212 West Judgment.

## BASIS FOR THE RELIEF REQUESTED

### A.    Bad Faith is a Basis for Lifting the Automatic Stay

45.    "Bad faith may be sufficient 'cause' to lift the automatic stay." *In re Valid Value Properties, LLC,* No. 16-13299 (MG), 2017 WL 123751 *5 (Bankr. S.D.N.Y. Jan. 5, 2017) (citing *Sonnax Indus., Inc. v. Tri-Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990)). *See also, In re MacInnis,* 235 B.R. 255, 259 (S.D.N.Y. 1998) ("[It] is well establish that a debtor's lack of good faith in filing a petition for bankruptcy constitutes sufficient cause to lift the stay.") (internal citations and quotation marks omitted).  Of course, a debtor's case

can also be dismissed for the debtor's bad faith.[2] 11 U.S.C. §1112(b); *In re C-TC 9th Avenue P'ship,* 113 F.3d 1304, 1310 (2d Cir. 1997).

46.     Thus, when analyzing whether a debtor's actions constitute "bad faith" to establish cause to lift the stay, courts utilize the same standard applied by a court when determining whether a case should be dismissed under Bankruptcy Code §1112(b).  *See In re Project Orange Associates, LLC,* 432 B.R.89, 112-13 (Bankr. S.D.N.Y. 2010); *In re AMC Realty Corp.,* 270 B.R. 132, 141 (Bankr. S.D.N.Y. 2001).

47.     "The good faith standard applied to bankruptcy petitions furthers the balancing process between the interest of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy." *In re Valid Value Properties, LLC,* No. 16-13299 (MG), 2017 WL 123751 *5 (Bankr. S.D.N.Y. Jan. 5, 2017) (quoting *In re Éclair Bakery Ltd.,* 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000) (citing *In re C-TC 9th Avenue P'ship,* 113 F.3d 1304, 1310 (2d Cir. 1997))).

48.     In determining whether bad faith exists sufficient to lift the automatic stay, the court should analyze "whether the [d]ebtor and its principals have played by the rules; have met their obligations under the Bankruptcy Code; and have 'done equity' when invoking the equitable protections the Bankruptcy Code provides." *Id.*  Filing a voluntary chapter 11 petition on the "eve of foreclosure" is not sufficient alone to constitute bad faith "cause" to lift the stay, but it is a factor considered in the analysis. *Id.* at 137 (citing *In re 124-6 West 22nd St. Corp.,* 214 B.R. at 757).

[2] Movant reserves the right to seek to dismiss the Debtor's chapter 11 case at a later time. Movant has not sought dismissal because the Florida Court's alter-ego finding might lead to the discovery of significant additional assets for the benefit of all creditors of the Debtor.

14

49.    "[A] determination of bad faith requires a full examination of all of the circumstances of the case; it is a highly factual determination but also one that may sweep broadly." *C-TC 9th Ave. P'ship,* 113 F.3d at 1312.

**(i)    The *C-TC* Factors Indicating Bad Faith**

50.    The Second Circuit Court of Appeals has identified eight (8) factors indicative of a bad faith filing:

(1)    The debtor has only one asset;

(2)    The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3)    The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4)    The debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which could be resolved in [a] pending state foreclosure action;

(5)    The timing of the debtor's filing evidences an intend to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6)    The debtor has little or no cash flow;

(7)    The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

(8)    The debtor has no employees.

*Id.* at 1311 (citing *Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.,* 139 B.R. 828, 832 (W.D. Ky. 1992)).

**(ii)    Objective Futility and Subjective Bad Faith Filing Must be Shown**

51.    In the Second Circuit, showing bad faith "requires showing 'both objective futility of the reorganization process and subjective bad faith in filing the petition.'" *In re Valid Value*

*Properties, LLC,* No. 16-13299 (MG), 2017 WL 123751 *6 (Bankr. S.D.N.Y. Jan. 5, 2017)

(quoting *In re Kingston Square Assocs.,* 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997)).  Only then

will "a rebuttable presumption of bad faith arise[] and the burden shifts to the debtor 'to establish

good and sufficient reasons why the relief should not be granted.'"  *Squires Motel, LLC v. Gance*

*(In re Squires Motel, LLC),* 426 B.R. 29, 34 (N.D.N.Y. 2010) (quoting *In re Yukon Enters., Inc.,*

39 B.R. 919, 921 (Bankr. C.D. Cal. 1984)).

        **(iii)**       **The Debtor's History of Bad Faith Repeats Itself**

      52.      Here, the Debtor's (and Mr. Kozel's) already documented history of ignoring court

orders and hiding assets leads to the conclusion that bad faith exists in filing this case. If not for the

fraudulent and illegal purchase and transfer of the Condominium into the name of the Debtor, the

filing of this case would not have been possible.

      53.      Before even reaching the factors delineated by *C-TC 9th Avenue Partnership* to

determine whether the Debtor's case is subjectively a bad faith filing, it is clear that, objectively,

a meaningful reorganization process for this Debtor would be futile.  The Debtor's case is not listed

as a single asset real estate case, but, in the Florida Court, the Debtor has claimed that its only asset

is the Condominium that is the subject of the Auction (which is worth less than the 212 West

Judgment of approximately $34 million).

      54.      In addition, the Debtor's inability to engage in a good faith reorganization or to

have filed this case in good faith is demonstrated by the Florida Court's September 14, 2016 and

September 15, 2016 decisions finding that, among other things: (a) the Debtor acting together with

the New Wife, Mr. Freeman, and others committed a fraud on the Florida Court "as part of a

knowing, intentional '<u>fraud on the court</u>' in anticipation of a judgment" demonstrating <u>the Debtor

was formed and used for improper purposes</u> (*In re Kozel,* No. 2010DR8976NC, 2016 WL 5082180

*4 (Fla. Cir. Ct. Sarasota Cty. Sept. 14, 2016)); and (b) the Debtor "committed a 'fraud on the court' and violated the most basic standards of integrity of litigants by knowingly falsifying records for production in discovery, by offering false testimony regarding those documents and other material issues, and by deliberately undermining the [2015 Asset Injunction] while on notice thereof." (*In re Kozel,* No. 2010DR8976NC, 2016 WL 5082181 *1 (Fla. Cir. Ct. Sarasota Cty. Sept. 15, 2016)). It is hard to imagine a more egregious demonstration of a debtor's bad faith.

55.    It is respectfully submitted that this Court is bound by the findings and decisions of the Florida Court on the issue of whether the purchase and transfer of the Condominium was fraudulent and illegal, and on the issue of alter-ego. Those findings were made by the Florida Court after an evidentiary trial. The Debtor cannot relitigate those decisions before this Court, and its inability to do so dooms its ability to resist a bad faith finding by this Court. *See In re Residential Capital, LLC,* No. 12-12020 (MG), 2014 WL 5473037 * 6 (Bankr. S.D.N.Y. Oct. 29, 2014) ("'The Rooker Feldman doctrine recognizes that district courts cannot act as appellate courts for state courts; Congress has reserved appellate jurisdiction over state court judgments exclusively to the Supreme Court.'") (quoting *Bd. of Managers of 195 Hudson St. Condo. vJeffrey M. Brown Assocs., Inc.,* 652 F.Supp.2d 463, 469 (S.D.N.Y.)). "The Rooker-Feldman doctrine bars not only claims that involve direct review of a state court decision, but also claims that are 'inextricably intertwined' with a state court decision." *See Swiatkowski v. Bank of America, NT & SA,* 103 Fed.Appx. 431, 431 (2d Cir. 2004) (citing *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir. 1996)).

56.    The Rooker-Feldman doctrine applies when four requirements are satisfied: "(1) the [party] lost in state court; (2) the [party] complains of injuries caused by the state court judgment; (3) the [party] asks for review and rejection of the state court judgment; and (4) the state

court judgment was rendered before the federal court proceeding was filed." *Garvin v. Bank of New York,* 227 Fed.Appx. 7, 8 (2d Cir. 2007) (citing *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 85 (2d Cir. 2005)).

57.     Here, the Debtor clearly "lost" in the Florida Court when the 212 West Judgment was entered and in the NY Court when its application for a temporary restraining order was denied. Next, although the reason for the chapter 11 filing is unknown, presumably it was so that the Debtor could delay the Auction of the Condominium. But, the Rooker Feldman Doctrine makes clear that the Debtor cannot ask this Court to revisit or review the valid and final Florida Court orders that are now res judicata.

58.     Thus, to the extent that the Debtor attempts to respond to this Motion and convince this Court that the Auction should not go forward despite the valid domestication of the 212 West Judgment and execution and levy upon the Condominium, or prove its good faith by attacking or attempting to circumvent the decisions of the Florida Court and the New York Court, this Court is bound by those prior state court decisions under the Rooker-Feldman doctrine.

(iv)     **The C-TC 9th Avenue Partnership Bad Faith Factors are Clearly Satisfied**

59.     Looking at the "totality of the circumstances" as required by *C-TC 9th Avenue Partnership* but also considering the delineated factors, it is clear that a determination of bad faith is warranted in this case. First, although the case was not filed as a single-asset real estate case, upon information and belief, the Debtor has represented in other proceedings that it does not own any assets other than the Condominium.

60.     Second, the number and size of the Debtor's unsecured creditors are not known, but the Movant holds a lien on the Condominium for over $34 million and upon information and belief

18

the Condominium is not known to be worth more than $12.75 million. *See* https://www.elegran.com/nyc/buildings/walker-tower.

61.    Third, the Condominium is the subject of a Sheriff's sale pursuant to a valid judgment entered by the Florida Court and the subsequent entry of the 212 West Judgment in New York.  Fourth, this case concerns an enforcement proceeding which will resolve a portion of the, in effect, two-party dispute which underlies this case, and will enable Movant to receive a portion of the amounts owed to her under the judgment.

62.    Fifth, the Florida Court's findings of the contemptuous and illegal behavior by the Debtor, Mr. Kozel and their agents, and the filing of the petition on the same day as the scheduled Auction "evidences an intent to delay or frustrate the legitimate efforts of the Movant to enforce her rights." *C-TC 9th Ave. P'ship,* 113 F.3d at 1311.

63.    Last, the Debtor as the alter-ego of Mr. Kozel, has no legitimate right to the Condominium, has no legitimate business to operate, has no employees, or has no cash flow. Moreover the Florida Court found that the formation of the Debtor was itself improper because it undertaken to effectuate a fraud on that court.

64.    Thus, in light of the foregoing, it is clear that the Debtor's case was filed in bad faith both objectively because a reorganization is futile, and subjectively because the petition was filed by an entity created for the purpose of hiding assets from Movant's reach, and for the improper purpose of delaying the Auction and the Movant's efforts to enforce and collect upon the 212 West Judgment.

**B.    Movant is Entitled to Relief from the Automatic Stay**

65.    Bankruptcy Code §362(d), governs relief from the automatic stay and provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the
> court shall grant relief from the stay provided under subsection (a)
> of this section, such as by terminating, annulling, modifying or
> conditioning such stay--
>
> > (1) for cause, including the lack of adequate protection of an
> > interest in property of such party in interest;
> >
> > (2) with respect to a stay of an act against property under
> > subsection (a) of this section, if –
> > > (A) the debtor does not have an equity in such
> > > property; and
> > > (B) such property is not necessary to an effective
> > > reorganization . . . .

11 U.S.C. § 362(d).

66.    Movant should be granted relief from the automatic stay under Bankruptcy Code

§362(d)(1) and (2), to allow the Auction of the Condominium to proceed because, as established

above, the Debtor is the mere alter-ego of Mr. Kozel and the Debtor filed this chapter 11 case in

bad faith as part of Mr. Kozel's illegal scheme to avoid paying Movant.

67.    The fact that the amount of the 212 West Judgment ($34 million) is more than

double the value of the Condominium (it was purchased in or about 2013 for approximately $12.75

million) indicates that the Debtor does not have any equity in the Condominium, and for the

reasons set forth above and does not require the Condominium for an effective reorganization.

**(i)    Cause Exists to Modify the Automatic Stay Under Bankruptcy Code Section
362 (d)(1)**

68.    Whether "cause" exists to modify the stay must be determined on a "case by case

basis, taking into consideration the interests of the debtor, the claimants and the estate."  *In re*

*MacInnis*, 235 B.R. 255, 259 (S.D.N.Y. 1998) (citing *In re Keene Corp.*, 171 B.R. 180, 183

(Bankr. S.D.N.Y. 1994)); *Manhattan King David Restaurant, Inc. v. Levine (In re Manhattan King*

*David Restaurant, Inc.)*, 163 B.R. 36, 40 (S.D.N.Y. 1993) (explaining the "term 'cause' is not

defined in the Bankruptcy Code, and whether cause exists should be determined on a case by case basis") (citing *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990)).

69.    As set forth above, bad faith may be sufficient "cause" to lift the automatic stay.  *In re Sonnax Indus., Inc.,* 907 F.2d 1280, 1286 (2d Cir. 1990).  *See also In re 68 West 127 Street, LLC,* 285 B.R. 838, 843 (Bankr. S.D.N.Y. 2002) ("Although not expressly stated in section 362(d)(1), it is well established that a debtor's bad faith constitutes 'cause' for relief from the automatic stay under that section.").

70.    As demonstrated above, the facts and circumstances of this case, and the Florida Court proceedings that took place prior to the Petition Date, warrant lifting the automatic stay to permit the Auction to proceed.  Indeed, the Debtor filed this case on the same day as the Auction, engaged in years of litigation in Florida avoiding the Movant's collection efforts, was found to have been formed for an improper purpose and was held in contempt of court for defying the 2015 Asset Injunction and defrauding the Florida Court.  In sum, it seems apparent that the Debtor filed this case in bad faith solely to delay the Auction and the Movant's efforts to enforce and collect upon the 212 West Judgment.

71.    Modification of the automatic stay may also be granted by a bankruptcy court under section 362(d)(1) to permit a creditor to proceed with litigation in another forum in an attempt to regain possession of its collateral or property for cause.  *See In re Burger Boys, Inc.*, 183 B.R. 682 (S.D.N.Y. 1994); *In re Diplomat Electronics Corp.*, 82 B.R. 688 (Bankr. S.D.N.Y. 1988).

72.    Here, the Movant has domesticated the 212 West Judgment, executed and levied upon the Condominium, scheduled the Auction, and is entitled to proceed in New York court to sell the Condominium and recover a portion of the amounts owed to her.

**(ii)      Modification of the Stay is Warranted Under Bankruptcy Code §362(d)(2)**

73.      In every case where a creditor seeks relief under Bankruptcy Code §362(d)(2), the creditor has the burden to establish the lack of equity in the property and the debtor has the burden to establish that the property is necessary for an effective reorganization. 11 U.S.C. § 362(g). *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988). As a leading bankruptcy treatise has stated: "The reference to an 'effective' reorganization should require relief from the automatic stay if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations." 2 COLLIER ON BANKR. ¶ 362.07 at 362-62. On this issue, the debtor bears the risk of non-persuasion.

74.      As stated above, the Debtor has no equity in the Condominium. Even if the Debtor could convince this Court that it has a valid ownership interest in the Condominium, it is without question that the Condominium is worth less than the 212 West Judgment (over $34 million).

75.      Moreover, the Debtor cannot demonstrate any reasonable prospects for a successful reorganization.  Indeed, the Debtor has no business operations or source of income, holds mere putative title to the Condominium, and was found by the Florida Court to have been formed and used for the improper purpose of defrauding the Florida Court and its largest creditor, the Movant.

76.      Furthermore, the Debtor is incapable of formulating a confirmable plan or reorganization because a sale of the Condominium (which would be in direct contravention of the 212 West Judgment and its domestication in New York as well as the scheduled Auction) cannot satisfy the Movant's claim and, therefore, the Condominium is not necessary for rehabilitation of the Debtor.

77.    In light of the fact that the Debtor has no equity in the Condominium, and the Debtor is incapable of rehabilitating, the Movant is entitled to relief from the automatic stay pursuant to Bankruptcy Code §362(d)(2).

78.    If the Court is inclined to enter an order granting Movant relief from the automatic stay, the Movant respectfully requests that the Court enter an order waiving the requirement under Bankruptcy Rule 4001(a)(3) that an order granting a motion for relief from the automatic stay made in accordance with Bankruptcy Rule 4001(a)(1) is stayed under the expiration of 14 days after entry of the order.

## CONCLUSION

79.    For all of the foregoing reasons, Movant respectfully requests that the Court enter an order modifying the automatic stay pursuant to Bankruptcy Code §362(d) to allow the Movant to proceed with the Auction of the Condominium, to utilize the proceeds of the Auction to partially satisfy the 212 West Judgment, and waiving the requirement under Bankruptcy Rule 4001(a)(3) that an order granting a motion for relief from the automatic stay made in accordance with Bankruptcy Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order.

## NOTICE

80.    Notice of this Motion has been given to (a) the Debtor, (b) the Debtor's counsel, (c) counsel to Mr. Kozel, (d) counsel to 3601 Setai LLC, (e) counsel to the Gokana Trust, (f) counsel to the New Wife, (g) the Office of the United States Trustee for Region 2, and (h) all parties who have requested notice in this case.

81.    No prior request for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Movant respectfully requests that the Court enter an Order granting this Motion, and granting Movant such other and further relief as is just and proper under the circumstances.

Dated: New York, New York
      May 15, 2017

                          **DIAMOND McCARTHY LLP**

                          By:    */s/ Adam L. Rosen*
                                Adam L. Rosen
                                Sheryl P. Giugliano
                        489 Fifth Avenue, 21st Floor
                        New York, New York 10017
                        (212) 430-5400

                        **FISHER, BENDECK & POTTER, P.L.**
                        501 So. Flagler Drive, Suite 450
                        West Palm Beach, Florida 33401
                        (561) 832-1005
                        Jeffrey D. Fisher, *subject to pro hac vice admission*
                        Zachary R. Potter

                        *Attorneys for Ashley Kozel*